**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IAN ADAMS *et al.*, | |
| Plaintiffs, | |
| vs. | Case No. 1:21-cv-3352 |
| TARGET CORPORATION, | |
| Defendant. | |

## <u>ORDER</u>

This matter is before the Court on End-User Consumer Plaintiffs' Motion to Compel Target Corporation to Produce Documents [ECF No. 1]. For the reasons set forth below, End-User Consumer Plaintiffs' ("EUPs") Motion to Compel is granted.

On March 6, 2018, EUPs served a third-party subpoena pursuant to Rule 45 of the Federal Rules of Civil Procedure on Target seeking data and information in connection with the *In re Broilers Chicken Antitrust Litigation*, 16 C 8637 (N.D. Ill.). Specifically, EUPs sought all contact information for any customer who had purchased chicken from any Target store over a 10-year period. EUPs need that information to administer settlements they have reached with certain Defendants in the antitrust litigation and to distribute settlement proceeds to class members.

Target timely responded to the EUPs' subpoena but objected on several grounds, including that Target "does not track, keep or maintain [the requested information] in the ordinary course of its business," and did not produce any responsive information. *See* Target's Opposition Brief, [ECF No. 28], at 1. EUPs did not seek to enforce the subpoena after receiving Target's response. On March 5, 2021, almost three years later and after EUPs moved for approval of some settlements that they had reached with certain Defendants in the antitrust litigation, EUPs reached out to Target again in an effort to obtain information responsive to their previously-served subpoena. EUPs'

Memorandum of Law, [ECF No. 11], at 4-5. Target again said it does not "track, keep, or maintain" the information EUPs are seeking "in the ordinary course of business" and further argued that EUPs' subpoena is (1) defective on its face because it does not include the current version of Federal Rule 45; (2) untimely because EUPs did not seek to enforce the subpoena when it was served in March 2018; and (3) unduly burdensome and not proportional because Target does not have the information requested in one database and it would have to query multiple databases to cull the information that EUPs have requested. *See* Target's Opposition Brief, [ECF No. 28], at 5. After Target refused to produce any information in response to the subpoena, EUPs filed this Motion to Compel.[1] *See* EUP's Motion to Compel, [ECF No. 1]. The Court is not persuaded by any of Target's arguments.

Target's first argument is that EUPs' Motion to Compel should be denied solely because EUPs included an outdated version of Federal Rule of Civil Procedure 45 in their original subpoena. The Court disagrees that is a legitimate reason not to enforce the EUPs' subpoena. The record shows that EUPs offered to issue a new subpoena to Target with the updated version of Rule 45 when the parties met and conferred, but Target never responded to that offer. *See* EUPs' Reply, [ECF No. 35], at 5. Therefore, the argument is waived. In addition, Target has not alleged, nor can it, that it suffered any prejudice as the result of receiving a subpoena that included outdated Rule 45 language.

---

[1] EUPs filed this Motion to Compel in the District Court of Minnesota because that is where compliance with the subpoena is required. Pursuant to Federal Rule 45(f), "[w]hen the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." FED. R. CIV. P. 45 (f). Target did not consent to the transfer so EUPs also filed a Motion to Transfer in the District of Minnesota. The District Judge in Minnesota found exceptional circumstances and transferred the matter to the Northern District of Illinois for resolution. *See* [ECF No. 38].

Target's second argument is that EUPs did not timely move to enforce their subpoena. That argument also is not well-founded. As Target acknowledged in its Opposition Brief (*see* EUPs' Opposition Brief, [ECF No. 35], at 7-8), EUPs are parties to a stipulation entered by this Court in the *In re Broiler Chicken Antitrust Litigation* to the effect that "any non-party previously served with an EUCP subpoena seeking Contact Information need not produce Contact Information in response to EUCPs' subpoena prior to this Court's certification of an EUCP class for settlement or liability purposes." *See* EUPs' Reply, [ECF No. 35], at 6 (citing Matthew Ruan Declaration, [ECF No. 37], at 2-3); *see also In re Broiler Chicken Antitrust Litigation*, 16 C 8637, Stipulation, [ECF No. 1160] (entered on August 29, 2018). That stipulation further provided that "any motions by EUCPs to compel the production of Contact Information from a non-party shall be filed no later than 45 days after the Court's certification of an EUCP class for settlement or liability purposes." *Id.* Therefore, EUPs presumably could not have sought to enforce the subpoena they served on Target before now without leave of court consistent with that stipulation.

Target argues that it was not a party to the stipulation and it did not agree that EUPs could delay enforcement of their subpoena. It is irrelevant that Target was not a party to the stipulation, however, because pursuant to the terms of the stipulation, EUPs effectively were prohibited from enforcing their subpoena against Target, and Target effectively was exempt from responding (had it sought such an exemption) until now. *See In re Broiler Chicken Antitrust Litigation*, 16 C 8637, Stipulation [ECF No. 1160] (entered on August 29, 2018).  It also may have been premature for EUPs to try to enforce their subpoena without first having settled with any Defendants in the *In re Broilers Chicken Antitrust Litigation*, as they now have done.

All things considered, the Court finds that EUPs have articulated a more than sufficient explanation for not negotiating sooner with Target about their subpoena, and there also is good

reason that the EUPs did not seek to enforce the subpoena until now. In addition, and similar to its previous argument, Target does not say it has suffered any prejudice as a result of EUPs' delay in seeking to obtain Target's customer information until now. Indeed, if some of the information EUPs now seek was available three years ago and is no longer available at this time, that redounds to the detriment only of the EUPs, not Target. Target also does not argue that EUPs' delay somehow makes it more difficult for it to respond to the subpoena today than would have been the case a few years ago.

Target's final argument is that it would be unduly burdensome for it to produce the information EUPs are seeking and requiring it to do so now is not proportional to the needs of the case. That argument also is not convincing at least on this record. The Court is not persuaded that Target would be unduly burdened or that it is not proportional to the needs of the case to require Target to spend some time, money, and effort to attempt to provide EUPs with the information they are seeking that resides in Target's electronic databases. Although Target argues it does not maintain the information that EUPs are seeking in the ordinary course of business and it would be required to create new documents to respond to the subpoena, other courts have recognized that "requiring a party to query an existing database to produce reports for opposing parties is not the creation of a new document." *Mervyn v. Atlas Van Lines, Inc.*, 2015 WL 12826474, at *6 (N.D. Ill. Oct. 23, 2015); *see also McGlone v. Centrus Energy Corp.*, 2020 WL 4462305, at *3 (S.D. Ohio Aug. 4, 2020) (collecting cases).

It is undisputed that the information EUPs are seeking from Target already exists in the bowels of Target's electronic data storage systems; it just does not currently exist in the format requested by EUPs. Instead, it exists in different databases, and Target would have to query those databases to recover the information and then put the data into a form in which it can be produced

4

to EUPs. The caselaw cited above suggests that in the age of e-discovery, that exercise would not so much require Target to create a new document as it would require it to, figuratively speaking, find an electronic version of a box or a binder into which to place, organize, and produce the information being sought. The Court realizes that may be an overly simplistic way to view the problem because it would probably take Target more time to organize the information into a useable electronic format than it would take to organize hard copy documents in a box or binder. But the Court is persuaded that the process Target would have to follow here is not analogous to creating a new document that does not otherwise exist as much as it is an exercise in figuring out how to produce existing information in a useable form.

The Court also is not persuaded by Target's reliance on *Conn. Fair Hous. Ctr. v. CoreLogic Prop. Sols.*, 2020 WL 401776 (D. Conn. Jan. 24, 2020), the only case it cites to support its position that EUPs are asking it to create a document that does not exist. In that case, a district court denied a motion to compel because the information necessary to respond to the subpoena currently did not exist in the databases that would be queried. 2020 WL 401776, at *9. That is not the case here. Target does not dispute that the relevant product codes sought by EUPs exist and that those product codes can be used to run searches within and query its customer database to compile the information requested. *See* Target's Opposition, [ECF No. 35], at 11.

Target argues that the work EUPs are asking it to do is unduly burdensome and not proportional to the needs of the case. It took Target personnel 58 hours to complete a similar analysis for another project that included only three codes, and Target says this potential project for the EUPs would include over 200 product codes. *See* Target's Opposition Brief, [ECF No. 28], at 11-12. It is not clear to the Court, however, that the amount of time it will take Target to gather and produce information responsive to EUPs' subpoena for 200 product codes will be 66 times

5

longer than it took Target to gather and produce information for three product codes, if that is the import of Target's argument. *Id.* So, on this record, the actual burden on Target to comply with the subpoena is unclear, and it also is unclear whether that burden is proportional to the needs of the case.

Frankly, given that Target is a named Direct Action Plaintiff itself in the *In re Broilers Chicken Antitrust Litigation*, 16 C 8637, and is seeking damages of its own in that case, it is a little surprising that Target would not want to do what it can do to provide its customers' contact information to EUPs to help effectuate EUPs' notice to them of a $104.5 million settlement in which those customers may be able to participate. But that consideration is not necessarily relevant to the Court's analysis of EUPs' Motion to Compel, and Target probably has no obligation to assist its customers in obtaining benefits of the EUPs' settlements if it does not want to do so.

Finally, it is clear that EUPs and Target have not had an opportunity to meet and confer about the subpoena since Target responded to EUPs' Motion to Compel saying, among other things, that it does not have responsive information before 2016. [2] It is not clear that the parties met and conferred substantively about Target's objections to the subpoena at all before the Motion was filed. Target's firm position before the Motion was filed appears to have been that there were no circumstances under which it should be required to respond to the subpoena. At a minimum, then, the meet and confer process needs to be completed before any legitimate questions of burden and proportionality can be addressed realistically. Perhaps the Court's resolution of some of Target's objections in this Order will assist the parties in resolving the matter without further litigation. The Court is informed that EUPs' counsel represented to Judge Durkin during a recent

---

[2] EUPs note they only are seeking information from 2012 through 2019 which is a shorter period of time than Target thought was involved. *See* EUPs' Reply, [ECF No. 35], at 8 n.2.

hearing concerning preliminary approval of their settlements that other major retailers have agreed to provide information similar to what the EUPs are seeking from Target.

For all the reasons discussed above, End-User Consumer Plaintiffs' Motion to Compel Target Corporation to Produce Documents [ECF No. 1] is granted subject to a meet and confer between the parties and a joint report on what information Target can provide in response to the subpoena, when it can provide that information, how much it will cost it to do so, how that cost compares (for example) to the annual budget of the Target department(s) that would be involved in producing the information, and what burden Target Corporation actually would suffer if it is required to provide some (or all) of the information that EUPs are requesting. The parties, therefore, are ordered to meet and confer about these issues, and shall file a joint report on or before September 7, 2021, with the results of that process. The Court will set further dates, as necessary, to address this matter after it receives that report.  If the parties are able to resolve the matter during their meet and confer process and there are no additional disputes, the parties should file a stipulation that the matter has been resolved and need not file the report with the information the Court has requested.

It is so ordered.

Dated: August 16, 2021

Jeffrey T. Gilbert
United States Magistrate Judge